IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GUS A. MCCOVERY, JR. #150038,    :

     Plaintiff,    :

vs.    :    CIVIL ACTION 06-00675-KD-B

CHARLES SHERMAN, M.D., *et al.*,    :

     Defendants.    :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 15, 16, 17, 29), and Plaintiff's opposition thereto (Doc. 31). After consideration of the pleadings and the evidence presented by the parties, and for the reasons set forth below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

## I.   SUMMARY OF ALLEGATIONS

Upon a review of the record, the undersigned summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

At the time of the incident made the basis of this litigation, Plaintiff, Gus A. McCovery, Jr., was an inmate incarcerated at the

Baldwin County Corrections Center ("BCCC").  (Doc. 1 at 4).
According to McCovery, on March 13, 2006, Defendants, Dr. Charles
Sherman and Chief Corrections Officer Stephen Arthur, denied him
hernia surgery, and, on March 16, 2006, Defendants denied him an
eye examination for deteriorating eyesight caused by glaucoma and
cataracts. (Id. at 5-6; Doc. 17, att. 6 at 24; Doc. 16, att. 3 at
40).

 According to McCovery, he was taken to the BCCC on January 27,
2006, after being arrested for first degree robbery. (Doc. 1 at
6). McCovery asserts that when he arrived at the BCCC, he had a
hernia condition which included a bilateral inguinal hernia and a
hernia around his navel. (Id. at 5; Doc. 31 at 28-29). On March
13, 2006, McCovery requested hernia surgery and was told to "keep
taking [his] pain pills and to wear a hernia belt." (Doc. 1 at 5).
On March 16, 2006, McCovery requested an eye examination and was
told that the county would not pay for it. (Id.)

 On May 17, 2007, McCovery was transferred to Kilby
Correctional Facility ("Kilby"), and, on October 10, 2007, he was
transferred to Holman Correctional Facility ("Holman"). (Doc. 5;
Doc. 12; Doc. 17, att. 1 at 7-8).  On June 11, 2008, while
incarcerated at Holman, McCovery successfully underwent
laparoscopic surgery to repair the bilateral inguinal hernia. (Doc.
31 at 28-29).

## II.  **PROCEDURAL ASPECTS OF THE CASE**

On October 16, 2006, McCovery filed the present § 1983 action against Defendants, Dr. Charles Sherman and BCCC Chief Corrections Officer Stephen Arthur, alleging denial of medical care while he was incarcerated at the BCCC.[1]  (Doc. 1 at 4).  McCovery seeks compensatory and punitive damages, as well as injunctive relief.[2] (Id. at 7).

In their Answers and Special Reports filed on November 8, 2007, November 12, 2007, and May 18, 2009, Defendants deny McCovery's allegations and assert the defenses of absolute and qualified immunity.[3]  (Docs. 15, 16, 17, 29).  On May 18, 2009, the

---

[1] McCovery also sued BCCC Lieutenant Leon Lasseter. However, a suggestion of death was filed as to Lieutenant Lasseter on October 23, 2007, and McCovery's motion to substitute the administrator of Lasseter's estate as a party to this action was denied on September 18, 2008. (Docs. 13, 27).  Therefore, Dr. Sherman and Chief Corrections Officer Arthur are the only defendants in this action.

[2] Because McCovery was transferred from the BCCC on May 17, 2007 (Doc. 5), his claims for injunctive and declaratory relief related to that incarceration are moot.  See Mosley v. Bishop, 2009 WL 1564778, *2 n.4 (S.D. Ala. 2009) ("'[A]n inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred.'").

[3] McCovery does not specify whether he is suing Defendants in their official or individual capacities or both.  Thus, the Court will consider both.

As a state officer, BCCC Chief Corrections Officer Stephen Arthur is absolutely immune from suit for damages in his official capacity.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); Turquitt v. Jefferson County, Ala., 137 F.3d 1285,

Court ordered that Defendants' Answers and Special Reports be treated as a Motion for Summary Judgment. (Doc. 30). On June 22, 2009, McCovery filed a response to Defendants' Motion for Summary Judgment. (Doc. 31). Defendants' motion and McCovery's opposition thereto are now before the Court.

### III. <u>SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render

---

1289 (11th Cir. 1998) (a county sheriff acts as a state officer when supervising inmates and operating county jails); <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1527 (11th Cir. 1990) (deputy sheriffs are considered legal extensions of the sheriff who also enjoy Eleventh Amendment immunity). In addition to enjoying Eleventh Amendment immunity, "state officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983." <u>Carr</u>, 916 F.2d at 1525 (citing <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989)). Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Dalrymple v. Reno</u>, 334 F.3d 991, 994 (11th Cir. 2003) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)). Having found herein that McCovery's allegations related to his medical treatment do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), *overruled in part*, <u>Pearson v. Callahan</u>, --- U.S. ----, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

On the other hand, as a private entity, Dr. Charles Sherman is not entitled to immunity, whether qualified or absolute. <u>See Hinson v. Edmond</u>, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician [ ] is ineligible to advance the defense of qualified immunity"); <u>accord</u> <u>Reed v. Barnes</u>, 2009 WL 857078,*2 n.2 (S.D. Ala. 2009) ("With respect to absolute immunity, Defendants have cited no case, and the Court is aware of no case, extending absolute immunity to privately employed physicians providing medical services to state inmates.").

"judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV.  DISCUSSION

As discussed above, McCovery seeks redress in this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of the medical treatment that he received at the BCCC during his incarceration from January 27, 2006, to May 17, 2007.  (Doc. 1 at 3; Doc. 17, att. 1 at 7-8).  Specifically, McCovery claims that Defendants, Dr. Charles Sherman and BCCC Chief Corrections Officer Stephen Arthur, violated his constitutional rights by failing to arrange an eye examination to check for glaucoma and cataracts and for failing to arrange surgery for his hernias.  (Doc. 1 at 4-5).

> Section 1983 provides in pertinent part that:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

In addressing McCovery's claims brought under § 1983, the

Court begins its analysis "by identifying the specific constitutional right allegedly infringed. . . ." Graham v. Connor, 490 U.S. 386, 394 (1989).  McCovery was held in the BCCC initially as a pretrial detainee on a charge of first degree robbery and then as a convicted prisoner following his conviction.  (Doc. 1 at 6; Doc. 17, att. 1 at 5).  "'Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause," while claims by convicted prisoners are governed by the Eighth Amendment's Cruel and Unusual Punishment Clause.  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (quoting Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)).  It makes no difference, however, whether McCovery's claim is analyzed as a Fourteenth Amendment claim or an Eighth Amendment claim.  The result is the same.

> [T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs.

Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).  "[I]t makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'"

Bozeman, 422 F.3d at 1271.

In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983.

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the objective existence of a "serious" medical need. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (1994), *overruled in part on other grounds*, Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002)). "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187 (citations omitted). "[T]he medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation marks and citations omitted).

Next, in order to meet the required subjective element of an Eighth Amendment denial of medical care claim, a plaintiff must

demonstrate "deliberate indifference" to a serious medical need.
Hill, 40 F.3d at 1186.

> In Estelle, the Supreme Court established
> that "deliberate indifference" entails more
> than mere negligence.  Estelle, 429 U.S. at
> 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835,
> 114 S. Ct. 1970.  The Supreme Court clarified
> the "deliberate indifference" standard in
> Farmer by holding that a prison official
> cannot be found deliberately indifferent
> under the Eighth Amendment "unless the
> official *knows of* and *disregards an excessive
> risk to inmate health or safety*; the official
> must both be aware of facts from which the
> inference could be drawn that a substantial
> risk of serious harm exists, and he must also
> draw the inference."  Farmer, 511 U.S. at
> 837, 114 S. Ct. 1970 (emphasis added).  In
> interpreting Farmer and Estelle, this Court
> explained in McElligott that "deliberate
> indifference has three components: (1)
> subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than mere negligence."
> McElligott, 182 F.3d at 1255; Taylor, 221
> F.3d at 1258 (stating that defendant must
> have subjective awareness of an "objectively
> serious need" and that his response must
> constitute "an objectively insufficient
> response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).  For the
reasons set forth below, the Court finds that McCovery's claims
fail as a matter of law.

   A.    **Failure to Provide an Eye Examination**.

As discussed above, McCovery claims that Defendants, Dr.
Sherman and Chief Corrections Officer Arthur, violated his
Fourteenth and Eighth Amendment rights by failing to schedule him

an eye examination to check for glaucoma and cataracts. (Doc. 1 at 4-6; Doc. 17, att. 6 at 24; Doc. 16, att. 3 at 40).  In order to survive Defendants' Motion for Summary Judgment related to this alleged deprivation, McCovery must establish both the objective and subjective elements of his claim.  This he has failed to do.

First, with respect to the objective element of his claim, McCovery must show that his eye condition constituted a "serious medical need" warranting medical treatment.  Hill, 40 F.3d at 1186. The record shows that, during his incarceration at the BCCC, McCovery repeatedly requested an eye examination to check for glaucoma and cataracts. (Doc. 16, att. 4 at 12; Doc. 16, att. 3 at 40, 43; Doc. 17, att. 6 at 21-24; Doc. 16, att. 2 at 5, 12; Doc. 31 at 30-32).  However, there is no evidence that a physician ever diagnosed McCovery as needing treatment for either of those conditions.  Hill, 40 F.3d at 1187.  To the contrary, Dr. Sherman testified that at no point during his care and treatment of McCovery did he ever conclude that McCovery had an eye condition that constituted a serious medical need warranting immediate medical attention.[4] (Doc. 16, att. 1 at 3).  There is also no evidence that McCovery suffered from an eye condition that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187.  In either of these situations, the medical condition must be one that, if left

_____

[4] Dr. Sherman testified that he found McCovery's eye condition to be "benign." (Doc. 16, att. 1 at 3).

unattended, poses "a substantial risk of serious harm." Farrow, 320 F.3d at 1243.  McCovery has failed to make this showing and, thus, he has failed to satisfy the objective element of this claim.

With respect to the subjective element of McCovery's claim, he must further show that Defendants were deliberately indifferent to a serious medical need.  Hill, 40 F.3d at 1186.  With respect to Dr. Sherman, the record shows that he provided McCovery treatment for his eye complaints on numerous occasions, prescribing eye drops at least eight times for McCovery's complaints of dry eyes.  (Doc. 16, att. 3 at 10, 12; Doc. 16, att. 2 at 14, 34, 40, 45, 47; Doc. 17, att. 3 at 8; Doc. 16, att. 1 at 3).  In addition, Dr. Sherman obtained and evaluated McCovery's previous institutional and private eye examination records, none of which reflected any history of glaucoma or cataracts.  (Doc. 17, att. 4 at 15-18; Doc. 17, att. 6 at 8-12; Doc. 16, att. 1 at 3).  Finally, on April 6, 2007, Dr. Sherman recommended that McCovery be evaluated by an eye doctor, which the jail staff was in the process of scheduling when McCovery was transferred on May 17, 2007.  (Doc. 16, att. 1 at 3; Doc. 17, att. 7 at 5; Doc. 17, att. 2 at 8; Doc. 31 at 31).

With respect to Defendant Arthur, the record shows that his involvement in McCovery's medical treatment at the BCCC was limited to signing a grievance form on July 28, 2006, approving the decision of Lieutenant Leon Lasseter to obtain McCovery's medical records before scheduling an eye examination.  (Doc. 1 at 6; Doc. 17, att. 6 at 21, 24).  In response to McCovery's request for an

eye examination to check for glaucoma and cataracts, Lieutenant Lasseter had stated: "You were seen by Dr. Sherman.  If you can give us a doctor['s] name that can give us information about your possible condition[,] we will try to get your records for the MD to review."  (Doc.  17, att. 6 at 21).  Defendant Arthur approved Lieutenant Lasseter's decision and added: "This has been addressed by Dr. Sherman and we have acted."  (Doc. 17, att. 6 at 24).

Considering all of the evidence related to McCovery's claim against Defendants Sherman and Arthur for denying him an eye examination while he was incarcerated at the BCCC, McCovery has failed to show that Defendants knew that their failure to schedule an eye examination posed an excessive risk to McCovery's health and that they disregarded that risk.[5]  Thus, McCovery has failed to

---

[5] While the Court recognizes that Dr. Sherman recommended on April 6, 2007, that McCovery see an eye doctor, and that he still had not received an eye examination at the time of his transfer on May 17, 2007, that fact alone does not constitute a constitutional violation.

> It is a reality of prison life that appointments with physicians or for diagnostic testing for treatment of non-life-threatening medical conditions must be scheduled.  It is particularly complicated when an inmate is to be seen by an offsite physician.  In such instances, appointments must be made; transportation must be arranged; security must be provided to escort the inmate to the appointment and back; and priority must be given to inmates according to the nature of their medical problems. . . .  It is reasonable to expect some delay while arrangements are being made.  Patients in the free world often experience similar delays when seeking treatment of

establish the subjective element of his claim against Defendants Sherman and Arthur for denial of an eye examination while he was incarcerated at the BCCC, and Defendants are entitled to summary judgment on this claim for this reason as well.

**B.   Denial of Surgery for Hernias**.

Next, McCovery claims that Defendants Sherman and Arthur violated his constitutional rights by denying him surgery for his hernias while he was incarcerated at the BCCC. (Doc. 1 at 5). The Court will address McCovery's claim against each defendant separately.

**1.   Chief Corrections Officer Arthur**.

In order to state a claim upon which relief can be granted in a § 1983 action, Plaintiff must establish a causal connection between each defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights.  See Moore, 2009 WL 1579534, *5; Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. 2009).  "Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*."  Moore, 2009 WL 1579534, *5 (citing Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not

---

non-life-threatening injuries or ailments.

Moore v. Ferrell, 2009 WL 1579534, *7 (S.D. Ala. 2009) (citation omitted).

13

sufficient to support their § 1983 claim. . . .")).

"[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Id. (citations omitted). "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Id. (citations and internal quotation marks omitted).

In such instances, McCovery must show that the policy or custom was "the 'moving force [behind] the constitutional violation.'" Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted). "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." Id. (citations omitted).

In this action, McCovery has presented no evidence that Chief Corrections Officer Arthur was personally involved in any decision related to McCovery's medical treatment for his hernia condition. Moreover, McCovery has presented no evidence that any custom or policy of Defendant Arthur resulted in a constitutional violation related to that treatment. Because there is no evidence whatsoever of a causal connection between any action, custom, or policy of Defendant Arthur and the medical treatment that McCovery received for his hernia condition, McCovery's claim against Defendant Arthur related to that treatment fails as a matter of law.

### 2. **Dr. Sherman**.

With respect to McCovery's claim against Dr. Sherman, the Court assumes, for purposes of Defendants' Motion for Summary Judgment, that McCovery's hernia condition constitutes an objectively serious medical condition. Therefore, the Court turns to the second, subjective element of McCovery's claim, that is, whether Dr. Sherman was deliberately indifferent to McCovery's serious medical need.

The record shows that, when McCovery arrived at the BCCC on January 27, 2006, he reported during his intake screening that he had a hernia. (Doc. 17, att. 6 at 2). Within the first two weeks of his incarceration, McCovery complained about pain associated with the inguinal hernia and asked to see the doctor. (Doc. 16, att. 4 at 15-16). The medical staff scheduled an appointment for

McCovery with Dr. Sherman for February 15, 2006, at which time Dr. Sherman evaluated McCovery and determined that the hernia was "easily reducible" and did not require surgery.[6]   Dr. Sherman prescribed McCovery a hernia belt to relieve his symptoms.  (Id. at 15-17; Doc. 16, att. 1 at 3; Doc. 16, att. 4 at 15).

In the following weeks, McCovery continued to experience pain related to the inguinal hernia, as well as the hernia in his navel area.  (Doc. 31 at 25-27; Doc. 17, att. 1 at 19).  McCovery refused to wear the hernia belt that Dr. Sherman had prescribed because it was too painful.  (Id.; Doc. 1 at 5).  The medical staff gave McCovery pain medication and scheduled another appointment with Dr. Sherman.  (Doc. 31 at 25-27).

On March 13, 2006, McCovery filed a grievance asking for surgery for his hernias.  (Id. at 24).  Lieutenant Leon Lasseter determined that McCovery's condition was not an emergency, and he instructed McCovery to take his pain medication and follow the doctor's orders.  (Id.)  The following day, March 14, 2006, Dr. Sherman examined McCovery and found that the hernias were not present at the time of the examination, noting that they were "reduced now." (Doc. 16, att. 1 at 3; Doc. 16, att. 4 at 10).  Dr. Sherman prescribed Naprosyn twice daily and concluded his examination.  (Doc. 16, att. 1 at 3).  Dr. Sherman opined that

---

[6] Dr. Sherman is a medical doctor who has been licensed as a physician in Alabama since 1985.  He is board certified in the specialty of internal medicine.  (Doc. 16, att. 1 at 1).

McCovery's condition did not require immediate medical or surgical attention. (Id.)

From April, 2006, through April, 2007, McCovery continued to complain of pain related to the inguinal hernia and the hernia around his navel, as well as various other ailments including dry eyes, foot fungus, bumps on his head, tooth pain, itching hands and feet, colds, ringing in ears, numbness in the arm and hand, and constipation. Dr. Sherman continued to treat each of McCovery's various medical conditions as presented. (Doc. 16, att. 4 at 2, 8; Doc. 31 at 21-36; Doc. 16, att. 3 at 2-7, 10-29, 48-50; Doc. 16, att. 2 at 5, 12-50; Doc. 31 at 16, 39-40; Doc. 17, att. 2 at 2, 11).

With respect to McCovery's hernias, specifically, on June 30, 2006, and July 18, 2006, McCovery filed grievances again requesting surgery for both of his hernias. (Doc. 31 at 16, 20). On July 27, 2006, Dr. Sherman reexamined McCovery and noted his complaints of pain in the navel area "off and on." (Doc. 16, att. 3 at 23). Dr. Sherman could find "no known factors that cause it to hurt" but noted that constipation "may be making it worse." (Id.) He prescribed Colace and pain medication twice a day. (Id.; Doc. 16, att. 3 at 21).

On November 2, 2006, Dr. Sherman reexamined McCovery for hernia pain, as well as complaints of constipation, itching ears, and problems with his eyes. He prescribed McCovery a laxative,

pain medication, ear drops, and nausea medicine.  (Doc. 16, att. 3 at 5; Doc. 16, att. 3 at 4; Doc. 16, att. 2 at 41).  On April 26, 2007, Dr. Sherman reexamined McCovery for "off and on pain" related to the hernia in his navel area.  Dr. Sherman noted that the hernia was "easily reducible."  (Doc. 16, att. 4 at 6-7).

The following month, on May 17, 2007, McCovery was transferred to Kilby prison and subsequently to Holman prison on October 10, 2007.  (Doc. 5; Doc. 17, att. 1 at 8; Doc. 12).  On June 11, 2008, approximately one year after McCovery was transferred from the BCCC, he underwent laparoscopic surgery to repair the "bilateral inguinal hernia."  (Doc. 31 at 28-29).  The surgeon's operative report indicates that the surgery was a success, and McCovery was transferred to recovery in "good condition," with no complications. (<u>Id.</u>)

In order to prove "deliberate indifference" on the part of Dr. Sherman with respect to the medical treatment that he received for his hernia condition, McCovery must show that Dr. Sherman knew that his failure to schedule hernia surgery posed an excessive risk to McCovery's health and that he simply disregarded that risk. <u>Farrow</u>, 320 F.3d at 1245.  There is no evidence to support such a finding.

While the record shows that McCovery complained frequently to Dr. Sherman about pain associated with his hernias, there is no evidence that Dr. Sherman disregarded any of those complaints.  As

evidenced by the record, Dr. Sherman examined McCovery regularly during his incarceration at the BCCC and repeatedly prescribed pain medication for McCovery, as well as a hernia belt, which McCovery did not wear.

"Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." Hill, 40 F.3d at 1187.  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. at 1188 (emphasis added).

Dr. Sherman was of the opinion that McCovery's hernia condition did not constitute an emergency necessitating surgery (Doc. 16, att. 1 at 3), and there is no evidence to indicate otherwise.  To the contrary, the record shows that the hernias were, at times, present and, at other times, undetectable or easily reducible.  (Doc. 16, att. 1 at 3; Doc. 16, att. 4 at 6, 10, 15).  Likewise, the pain associated with McCovery's hernias was "off and on."  (Doc. 16, att. 3 at 23; Doc. 16, att. 4 at 6-7).  McCovery left the BCCC on May 17, 2007, and more than one year passed before another physician decided that surgery was indicated for one of McCovery's hernias and that surgery was successfully completed

without complications.  (Doc. 31 at 28-29).  In any event, McCovery
has submitted no "verifying medical evidence" that Dr. Sherman's
failure to schedule hernia surgery while he was incarcerated at the
BCCC worsened or exacerbated his medical condition, and, thus,
McCovery has failed to satisfy the subjective element of his claim
against Dr. Sherman.  Hill, 40 F.3d at 1188.

The Eleventh Circuit has recognized that, "when a prison
inmate has received medical care, courts hesitate to find an Eighth
Amendment violation." Waldrop v. Evans , 871 F.2d 1030, 1035 (11th
Cir. 1989).  The fact that a plaintiff may disagree with the
efficacy of the treatment recommended or simply prefer a different
course of treatment does not state a valid claim of medical
mistreatment under the Eighth Amendment. See, e.g., Adams v. Poag,
61 F.3d 1537, 1545 (11th Cir. 1995) ("the question of whether
governmental actors should have employed additional diagnostic
techniques or forms of treatment 'is a classic example of a matter
for medical judgment' and therefore not an appropriate basis for
grounding liability under the Eighth Amendment.") (quoting Estelle,
429 U.S. at 107); Del Muro v. Federal Bureau of Prisons, 2004 WL
1542216, *4 (N.D. Tex. 2004) (unpublished) ("It is well-established
that a difference in opinion or a disagreement between an inmate
and prison officials as to what medical care is appropriate for his
particular condition does not state a claim for deliberate
indifference to medical needs.").

For each of the reasons discussed herein, McCovery has failed

to satisfy his burden with respect to his Fourteenth and Eighth Amendment medical care claims against Dr. Sherman and Chief Corrections Officer Arthur.   Therefore, these Defendants are entitled to summary judgment on McCovery's Complaint in its entirety.

## V.   CONCLUSION

Based on the foregoing, it is recommended that Defendants Dr. Charles Sherman and Chief Corrections Officer Stephen Arthur' Motion for Summary Judgment (Docs. 15, 16, 17, 29) be granted, that McCovery's action be dismissed with prejudice, and that judgment be entered in favor of Defendants on all claims.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the **4th** day of **August, 2009**.

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

21

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   <u>Objection</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.